# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | |
|---|---|
| ANTOINE WARREN, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO.2:15-CV-221- |
| | ) MHT |
| | ) |
| v. | ) |
| | ) |
| | ) |
| C.O.I. TERRANCE BROWN, et al., | ) |
| | ) |
| Defendants. | ) |

## FIRST AMENDED COMPLAINT

COMES NOW the Plaintiff, Antoine Warren, by and through his undersigned counsel of record, and avers as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 42. U.S.C. §1983, as well as 28 U.S.C. §1331 (federal question), 28 U.S.C. §1343(a)(3) (civil rights) and 28 U.S.C.§1367(a) (supplement jurisdiction). Plaintiff was at all times relevant to this complaint and inmate in the custody of the Alabama Department of Corrections (ADOC).

2. On the occasion complained of, Plaintiff was incarcerated at Elmore

Correctional Facility in Elmore, Alabama, in the Northern Division of the Middle District of Alabama.

3. Defendant Charles Ross[1], was at all times relevant a supervising correctional officer at the Elmore Correctional facility, and was a direct supervisor of his subordinate correctional officers, including Defendants Brown, Snead and Tennyson. As a supervisor, Ross was responsible for Defendants Brown, Snead and Tennyson's conduct and discipline and insuring that they acted professionally and in accordance with constitution principles. Defendant Ross is sued in his individual capacity.

4. Defendants, C.O.I. Terrance Brown, C.O.I. Joshua Tennyson and C.O.I. James Snead (the "Individual Defendants")[2] were at all times relevant correctional officers at the Elmore Correctional Facility, and they were charged with maintaining discipline in the institution within established constitutional principles. These Individual Defendants are sued in their individual capacities.

## FACTS

5. On or about April 4, 2013, Plaintiff was in his dormitory C2 at the

---

[1] In the original Complaint filed on April 9, 2015, [Doc. 1], Plaintiff identified Ross as "Sgt Ross" In the First Amended Complaint, Plaintiff more correctly identifies Defendant Ross by including his first name in order to more accurately identify Ross as a party defendant in this case. Therefore, this First Amended Complaint designates defendant "Sgt.Ross" as "Sergeant Charles Ross".

[2] In the original Complaint filed on April 9, 2015, [Doc. 1], Plaintiff identified each of the Individual Defendants by their ADOC title as "C.O.I." followed by their corresponding last names. This First Amended Complaint more correctly identifies each of the Individual Defendants by including their first names, so each is designated and identified as "C.O.I. Terrance Brown, C.O.I. James Snead, and C.O.I. Joshua Tennyson".

Elmore Correctional Facility in Elmore, Alabama. He had in his possession a cellular phone which was hidden in the ADOC-issued pants he was wearing.

6.   Plaintiff was assigned to bed C2-83A and his bunkmate was another inmate, Randy Shoemaker.

7.   While Plaintiff and Shoemaker were at their bunk on April 4, 2013, Plaintiff was approached by Defendant Brown who told Plaintiff to stand up for a shakedown. Brown then instructed Plaintiff to face his bed and position his hands to allow Brown to conduct a pat down search. Plaintiff complied.

8.   After Brown conducted his pat down search and did not find any contraband (including the cell phone), Brown searched through Plaintiff's personal belongings in his locker. As Brown searched the locker, Plaintiff quietly removed the cell phone from his pants and attempted to covertly place the phone on another inmate's bed nearby.  As Plaintiff laid the phone on the other bed, the phone struck the metal edge of the bed making a noise that drew Brown's attention.

9.   Plaintiff quickly threw the phone to the floor some distance away from his bed in hopes that Brown would not see and would not know Plaintiff had a phone.

10.   The phone landed near another inmate named Rashad Malone who reached down to pick it up.

11.   As Malone reached to pick up the phone, Brown immediately rushed

toward Malone to grab the phone and knocked the phone out of Malone's hands sending the phone sliding across the floor.

12. After Brown knocked the phone from Malone's hand, Brown attempted to run after the phone and accidently collided with a nearby dorm bed and cut his lip.

13. Brown confiscated the cell phone and returned to Plaintiff and Malone and grabbed them by their collars and angrily pushed them toward the exit of the dorm leading to an area outside the building.

14. Once outside, Brown cursed at Malone and stated, "You made me bust my lip," and Brown punched inmate Malone in the face in retaliation for Malone's role in trying to pick up the phone. Malone fell to the ground and Brown continued to beat and kick Malone.

15. Defendants Snead and Tennyson arrived on scene while Brown was beating Malone and joined Brown in beating and kicking Malone who was on the ground and was not attempting to resist any of the officers, but instead, was attempting to protect himself from injuries due to being punched and kicked.

16. Plaintiff, who stood by and saw the beating Malone received and feared that he would be next, lay flat on the ground and put his hands behind his head in a posture of utter submission.

17. Defendant Ross arrived on the scene in the dorm while the Individual

Defendants kicked and punched Malone, and Ross stood by several seconds and allowed the beating to continue before he finally said "that's enough".

18. After Ross told the other officers to stop beating Malone, Brown directed Plaintiff to stand up and put his hands down. Plaintiff complied, but when he lowered his hands in compliance with Brown's orders, Brown punched Plaintiff on the left side of his face knocking him to the ground. Brown struck Plaintiff in the presence of the other Defendants, including Ross.

19. The Individual Defendants joined Brown to administer a beating to Plaintiff, and the Individual Defendants collectively punched and kicked Plaintiff repeatedly as he was curled into a ball on the ground. Ross stood by passively and witnessed this beating and allowed it to continue for several seconds before telling the Individual Defendants to stop. Plaintiff suffered numerous blows both sides of his head and face, including at least one significant blow to his ear. This beating was carried out sadistically and maliciously for the very purpose of causing harm and for no good faith purpose to restore discipline.

20. After Ross finally told the other defendants to stop, Ross told Plaintiff to stand facing the wall with his hands against the wall. Plaintiff complied. While Plaintiff faced the wall, he looked over his shoulder and saw Ross approach him holding a baton. Ross then questioned Plaintiff about who the cell phone belonged to and immediately struck Plaintiff across the back of his thighs. Plaintiff answered

that the officer had the phone. Ross struck him again on his legs casu9ing significant pain and injury to Plaintff's legs. Ross asked again who the phone belonged to and Plaintiff said it was his. Ross struck Plaintiff with his baton at least two times across the back of his legs sadistically and maliciously and for no good faith purpose to restore discipline and for the very purpose of causing harm.

21.   After leaving the shift office, Plaintiff and Malone were escorted to Staton Correctional Facility's Healthcare Unit to receive medical treatment for their injuries caused by the beatings and the baton. According to what he was told by the nurse on duty at Staton, Plaintiff's right eardrum appeared to have "erupted" and it was recommended that he see an ear, nose and throat physician for specialized treatment. At some point later in time, Plaintiff was treated by an outside ENT doctor specializing in ear injuries and ultimately underwent several surgical procedures in attempts repair the damage to his ear. Plaintiff suffers from permanent hearing loss and other problems relating to the damage he suffered to his ear during the beating.

22.   At no point in time did Plaintiff offer any physical resistance to any of the Defendants other than to raise his hands and curl into a ball to shield himself from the blows. Plaintiff complied with the Defendants' various orders to stand, place hands on the wall, put his hands down, etc., at various points during this incident.

23. As a proximate consequence of the beating by all Defendants, Plaintiff was bruised and battered throughout his body, suffered ear injuries, and continues to suffer hearing deficiencies and has undergone multiple surgical procedures in attempts to correct the injuries caused to his ear and auditory system. In addition to the damage caused to his ears, Plaintiff also suffered extreme bruising, cuts and pain about his face, head, body and legs during the beating caused by all Defendants.

24. Plaintiff alleges that Ross, as a direct supervisor of the subordinate officers Brown, Snead and Tennyson, had a duty to train and supervise his subordinate officers to respect the inmates, including Plaintiff's, Eight Amendment rights to be free from cruel and unusual punishment.

25. Plaintiff alleges that there was a history of widespread abuse at Elmore where subordinate correctional officers -  including the Individual Defendants – routinely beat inmates in a sadistic and malicious manner without any good faith purpose to restore discipline, and that during the weeks and months leading up to the incident involving Plaintiff's beat down the Defendants, several inmates were similarly attacked and beaten by the Individual Defendants and other subordinate correctional officers under Ross' supervision in violation of the inmates' Eighth Amendment rights to be free from cruel and unusual punishment. Plaintiff further alleges that Ross either participated in such unconstitutional

conduct or tolerated this sort of conduct by his subordinates, or knew of the history of widespread abuse of inmates by subordinate officers that place Ross on notice of a need to correct the deprivations of inmates' 8th Amendment rights as described above, and he failed to do so. The following are some examples of incidents where Ross and/or his subordinates similarly attacked and beat inmates at Elmore within the same time period as the attack on Plaintiff on April 4, 2013:

    A) On February 24, 2013, Officers Tennyson and Brown attacked other inmates. Specifically, Defendants Brown,Tennyson and Ross, along with fellow correctional officers Williams and Hill, attacked inmates Chase Johnson and Omar Yelverton outside of the shift office after a shakedown by the Defendants at Elmore's B where inmate Johnson attempted to toss aside a cell phone as officers searched him. The Defendants Brown, Tennyson and Ross and other correctional officers under Ross's supervision beat Johnson and Yelverton repeatedly while these inmates were handcuffed, and emptied cans of mace in their faces and genital areas.

    B) On March 28, 2013, Officers King, Calloway, Wilson (who were subordinate to Ross) and others confronted inmate Dion Neal after he allegedly wrote a romantic letter to a female officer. The

officers handcuffed Neal and took him to a guard shack near the facility's rear gate where a dozen or more officers severely beat him. Dion Neal filed suit relating to this incident on March 18, 2015. (See *Neal v. Calloway et al*, 2:15-cv-00174-MHT-SRW, U.S. Middle District Court of Alabama)

C) On April 7, 2013, inmate Clate Clark was beaten by Defendant Snead after Clark through a cell phone across his dorm. Snead beat Clark, handcuffed him and took him to Sgt. Ross at the shift office where Snead struck inmate Clark in the back of the head in Ross's presence and where Ross proceeded to choke inmate Clark until he lost consciousness and passed out striking his head on the wall requiring stitches to repair his injuries.

D) On April 16, 2013, inmate Damien Jackson was on the basketball court at Elmore when he was ordered to report to the shift office. On his way to the office, another correctional officer, Officer Williams, was escorting Jackson when he became angry with Jackson and struck him in the face with his fist. Jackson fell to the ground and Officer Williams then stomped on his face and neck. Officer Williams struck Damien Jackson so hard that he injured his own hand in the assault.

    E) During none of the above incidents did any of the inmates offer resistance or threaten any of the officers who beat and/or kicked them.

    F) On July 9, 2013, *al. com* reporter Mike Cason published an article titled "*Equal Justice Initiative Alleges Several Beatings, Sexual Abuse of Inmates in Alabama Prisons*" that highlighted numerous complaints of beatings of inmates at Elmore Correctional Facility during the first six months of 2013. The Equal Justice Initiative ("EJI") is a nationally recognized non-profit organization located in Montgomery, Alabama, that provides legal representation to indigent defendants and prisoners. According to the article, EJI conducted an investigation into allegations of abuse against inmates an three Alabama prisons in early 2013 and discovered nearly a dozen separate instances where a group of correctional officers at Elmore took inmates to isolated areas of the prison, handcuffed the inmates, stripped them naked, and then several guards would beat the inmates.

    26. Plaintiff alleges that Defendant Ross knew that the correctional officers at Elmore, including the Individual Defendants and himself, had a widespread history and pattern of abusing inmates for the sole purpose of causing

harm and without a good-faith purpose to restore discipline, and he knew that a widespread culture of willful violence had developed among many of his subordinate correctional officers at Elmore, including the Individual Defendants. Ross, as the supervisor for the correctional officers, including the Individual Defendants, failed to properly train, supervise and discipline correctional officers and this failure led directly to the described culture of violence, impunity and repeated violations of inmates' constitutional rights, including Plaintiff's constitutional rights.

27. Plaintiff alleges that Ross personally participated in the unconstitutional conduct of depriving Plaintiff of his Eighth Amendment Right to be free from cruel and unusual punishment when he stood by and actively ratified the Individual Defendants unconstitutional actions of beating Plaintiff sadistically and maliciously, and when Ross himself participated in beating Plaintiff with his baton in the manner that was sadistic and malicious and in violation of Plaintiff's constitutional right to be free from cruel and unusual punishment.

28. Defendant Ross, as a supervisory official at Elmore, acted in a sadistic, malicious and deliberately indifferent manner to inmates, including Plaintiff's, Eighth Amendment right to be free from cruel and unusual punishment over a long period of time which created an environment where the Individual Defendants' unconstitutional abuse of Plaintiff on the date of this incident was

causally related to Ross's objectively unreasonable inaction, custom or policy of deliberate indifference, and/or participation and authorization of the constitutional deprivations visited upon Plaintiff as described throughout this First Amended Complaint.

29. At all times relevant to this case, all Defendants were acting under the color of state law.

30. At all times relevant to this case, all Defendants acted maliciously, sadistically and with the intent to deprive Plaintiff of his constitutional rights without any good faith penologic purpose.

31. At all times relevant to this case, all Defendants acted with deliberate indifference to Plaintiff's constitutional rights, including Plaintiff's Eighth Amendment Right to be free from cruel and unusual punishment.

32. The Defendants actions amounting to the Eighth Amendment violations against Plaintiff as described throughout the factual allegations above proximately caused Plaintiff's injuries, to-wit:

   a. Serious physical injuries to Plaintiff's head, ears and ability to hear requiring surgical repair and causing pain and suffering and permanent hearing loss;

   b. Numerous bruises and cuts about Plaintiff's head and body which caused pain and suffering;

   c. Emotional suffering and anxiety as a result of his beating and injuries; and

   d. Medical bills and costs to treat Plaintiff for his injuries and future medical bills and costs for his injuries;

## COUNT ONE

*Violations of the Eighth and Fourteenth Amendment to the U.S. Constitution and Liability Imposed by 42 U.S.C. §1983 Against all Defendants*

33.     Plaintiff adopts and incorporates by reference all preceding allegations contained in this First Amended Complaint.

34.     Defendants Ross, Brown, Snead and Tennyson violated the Plaintiff's right to be free from cruel and unusual punishment and to be protected by the Eighth Amendment to the United States Constitution and made applicable to the states by the Fourteenth Amendment.

35.     Defendant Ross participated, encouraged, knew and was deliberately indifferent to the violation of Plaintiff's rights as described throughout this First Amended Complaint as described above at paragraphs 17 through 31.  During the beating of Malone and Plaintiff, Ross, a supervisor, waited several seconds to intervene and prevent his subordinate officers from unlawfully beating Plaintiff in

order to allow the Individual Defendants to administer a sadistic and malicious beating to Plaintff.  Further, Ross, in the presence of his subordinate officers, including, the Individual Defendants, struck and beat Plaintiff in a malicious and sadistic manner that was for the sole purpose of causing harm and without any purpose to restore discipline.

36. Plaintiff sues the Defendants in this matter for violations of the Eighth Amendment to the U.S. Constitution committed by all Defendants who sadistically and maliciously subjected Plaintiff to brutal force which was unnecessary for any legitimate penal interest and amounted to punishment.

37. Plaintiff sues for violations to the Fourteenth Amendment to the U.S. Constitution to be free from gratuitous and excessive force and punishment and the Fourteenth Amendment right to the due process of law.

38. At all times herein mentioned, Defendant Ross, as a supervisor, authorized and ratified the wrongful acts of the Individual Defendants. The Individual Defendants' wrongful conduct was the result of Ross' deliberate indifference to inmates, including Plaintiff's ,Eighth Amendment rights in the training of his subordinate officers, including the Individual Defendants.  Ross is also liable to the Plaintiff for the failure to train his subordinate officers where the failure to train amounted to the deliberate indifference to the rights of inmates, including Plaintiff, with whom Ross's subordinates, including the Individual

Defendants, were likely to come into contact.

39. The Defendants acted with reckless disregard to Plaintiff's rights which constituted the Defendants' willful violations of the Eighth and Fourteenth Amendments to the U.S. Constitution. The Defendants unconstitutional actions described throughout this First Amended Complaint were a direct and proximate cause of Plaintiff's injuries described more particularly at paragraph 32 above.

40. Ross violated Plaintiff's Eighth Amendment right not to be subjected to cruel and unusual punishment made applicable to the states by the Fourteenth Amendment, by his own personal unconstitutional acts of striking Plaintiff for no good reason but in a manner that was sadistic and malicious for purposes of causing harm. That failure was a direct and proximate cause of injuries to Plaintiff described more particularly at paragraph 32 above.

41. Ross violated Plaintiff's right not to be subjected to cruel and unusual punishment protected by the Eighth Amendment to the United States Constitution and made applicable to the states by the Fourteenth Amendment for failing to properly train, supervise, and discipline the correctional officers under his authority, including Brown, Snead and Tennyson. That failure was a direct and proximate cause of injuries to Plaintiff described more particularly at paragraph 32 above.

42. As a direct and proximate result of all Defendants foregoing

wrongful acts, Plaintiff has been physically hurt and injured in his person, was bruised and battered, suffered permanent ear damage and hearing loss, and incurred emotional suffering, all of which have cause and have continue to cause Plaintiff great mental and physical pain and suffering, anxiety, distress and anguish.

    WHEREFORE, Plaintiff seeks from these Defendants:

1. A judgment against these Defendants for such compensatory and punitive damages as may be awarded:
2. Pursuant to 42 U.S.C. §1988, his costs and reasonable attorney fees; and
3. Such other, further and different relief as to which he may be entitled.

## COUNT TWO

### *State Common Law allegations of Assault and Battery*

43. Plaintiff adopts and incorporates by reference all preceding allegations contained in this First Amended Complaint.

44. Defendants, Ross, Brown, Snead and Tennyson assaulted and battered Plaintiff in violation of Alabama common law and in violation of state statutes and ADOC mandatory regulations and policies.

45. In committing their assault and battery against Plaintiff, Defendants acted in violation of Plaintiff's federal and state constitutional rights, and in violation of mandatory state law and mandatory policies and guidelines and

regulations administered by the ADOC. In so doing, the Defendants acted with neglect, carelessness or unskillfulness, and/or acted willfully, maliciously, in bad faith, recklessly, beyond their authority, or under a mistaken interpretation of the law.  Further, though each of the Defendants was acting in the line and scope of their employment as ADOC correctional officers and supervisors, none of the Defendants were exercising judgment or discretionary authority as ADOC correctional officers or supervisors when they assaulted and beat Plaintiff as described throughout this First Amended Complaint.

WHEREFORE, Plaintiff seeks such compensatory and punitive damages as he may be due and awarded plus his costs.

Respectfully submitted,

*/s/Alan B. Lasseter*
ALAN LASSETER (LAS007)
Attorney for Plaintiff(s)


**OF COUNSEL**:
**SHUTTLESWORTH LASSETER, LLC**
19 Richard Arrington Jr. Blvd North
Birmingham, AL 35203
Telephone:  (205)322-1411
Facsimile:   (205)328-1411

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 20th day of January, 2016, I electronically filed the foregoing with the Clerk of the Court using the Alafile system, which will send electronic notification of such filing to the following:

Elizabeth Sees,
Alabama Department of Corrections
Legal Division
301 Ripley Street
Post Office Box 301501
Montgomery, AL  36130-1501

Mary Coleman Butler
Alabama Department of Corrections
Legal Division
301 Ripley Street
Post Office Box 301501
Montgomery, AL  36130-1501

Andrew W. Redd, Assistant Attorney General
Alabama Department of Corrections
Legal Division
301 Ripley Street
Post Office Box 301501
Montgomery, AL  36130-1501

VIA CERTIFIED MAIL FROM THE CLERK OF THE COURT

Joshua Tennyson
98 Elmore Road
Titus, Alabama 36080

James Snead
140 Uden Way
Millbrook, Alabama 36054

                                              */s/Alan B. Lasseter*

                                              OF COUNSEL